UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER LYNNE GOLSTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.   ) | Case No. 23-CIV-906-AMG |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Jennifer Lynne Golston ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues (Docs. 6, 11, 12).[1] The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 13, 14). Based on the Court's review of the record and the issues presented, the Court **REVERSES** Defendant Commissioner's decision, and the case is **REMANDED** for further consideration consistent with this order.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

**I.      Procedural History**

Plaintiff filed an application for SSI on July 9, 2021, and alleged an amended disability onset date of July 10, 2021. (AR, at 17, 65-73). The SSA denied the application initially and on reconsideration. (*Id*. at 74, 75, 99-103, 119-21). Then a telephonic administrative hearing was held on January 19, 2023. (*Id*. at 36-64). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 17-29). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.     The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2021, the amended alleged onset date. (AR, at 19). At Step Two, the ALJ found that Plaintiff had the following severe impairments: anterior spondylosis of the lumbar spine with right sciatica, posttraumatic stress disorder (PTSD), anxiety, and depression. (*Id*.) At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.) The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except that [Plaintiff] is limited to occasional use of ladders and stooping. [Plaintiff] is able to understand, recall, and perform simple repetitive tasks. [Plaintiff] is able to focus for two-hour periods with routine breaks and is able to pace and persist for an eight-hour workday and forty-hour workweek despite psychological symptoms. [Plaintiff] is able to occasionally interact with the public, supervisors, and coworkers. [Plaintiff] is able to adapt to a work setting that does not involve frequent or rapid changes. Rather, [Plaintiff] can adapt to

occasional changes in a work environment where the work demands are generally stable.

(*Id*. at 23). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 27). At Step Five, however, the ALJ found when "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as a housekeeping cleaner, a mail room clerk, and a collator operator. (*Id*. at 28). Thus, the ALJ found that Plaintiff had not been under a disability since July 10, 2021, the amended disability onset date. (*Id*. at 29).

**III.   Claims Presented for Judicial Review**

On appeal, Plaintiff raises four issues: (1) "[t]he DDS opinions could not have been a basis for the ALJ's RFC because he found them only partially persuasive and did not find them consistent with the medical records," (Doc. 6, at 8-9); (2) "[t]he ALJ's evaluation of the physical CE's opinion was inadequate and his rejection of the CE's opinion was improper," (*id*. at 9-15); (3) "[t]he ALJ did not perform a proper consistency evaluation per SSR 16-3p," (*id*. at 15-26); and (4) "[t]here was no function-by-function evaluation as required by SSR 96-8p," (*id*. at 26-30).

In response, the Commissioner argues that (1) "[t]he ALJ did not have to rely on a medical opinion in crafting Plaintiff's RFC," (Doc. 11, at 7); (2) "[t]he ALJ properly evaluated Dr. Weeks's opinion," (*id*. at 8-12); (3) "[t]he ALJ properly evaluated Plaintiff's symptoms," (*id*. at 13-19); and (4) "[t]he ALJ did not have to conduct a function-by-function analysis," (*id*. at 19-21).

**IV.     The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921; *see id*. §§ 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC,")[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also Lax v. Astrue*, 489 F.3d 1080,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

### V. The ALJ's Consistency Analysis of Plaintiff's Physical Symptoms[3] Is Not Supported By Substantial Evidence.

> The Commissioner has a two-step process for evaluating a claimant's symptoms, that is, his or her subjective statements about his or her impairments and limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms . . . and determine[s] the extent to which [a claimant's] symptoms limit his or her ability to perform work-related activities." *Id*. at * 4. In making this evaluation, the ALJ considers the medical evidence of record,

---

[3] Plaintiff does not raise any issues relating to her mental impairments, symptoms, or RFC, (*see* Doc. 6), and thus the Court's analysis focuses solely on Plaintiff's physical impairments, symptoms, and RFC.

along with several factors, including the claimant's activities of daily living. *See id*. at *7.

*James v. Comm'r, SSA*, No. 23-8023, 2024 WL 1133442, at *3 (10th Cir. Mar. 15, 2024).

With regard to the second step of this analysis, the SSA states:

[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

Soc. Sec. Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017). The SSA explains that

[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . . We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.

. . .

However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.

If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about

>   the individual's symptoms, including agency personnel, as well as the factors
>   set forth in our regulations.

*Id*. at * 5-6 (footnotes omitted).  The SSA directs the ALJ to consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions.  *Id.* at *7-8; *see* 20 C.F.R. § 416.929(c)(3).

The ALJ's decision briefly summarized Plaintiff's self-reported symptoms as follows:

> [Plaintiff] is alleging disability due to five bulging and slipped discs, severe arthritis, depression, anxiety, hiatal hernia, chronic pain, and brain injuries (Exhibits 3E, 9E, 12E). [Plaintiff] alleges that her impairments limit her ability to sleep, lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and use her hands (Exhibits 4E, 6E).  At the hearing, [Plaintiff] testified that she is limited to sitting and standing for less than ten minutes and that she could only walk approximately a half of a block before needing to sit down.

(AR, at 23).  Indeed, Plaintiff testified that she experiences disabling pain in her "whole back" extending down her right leg to her knee.  (*Id*. at 42-43).  The ALJ then stated that

> [a]fter careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id*. at 23-24).  As justification for her finding of inconsistency, the ALJ stated:

> [a]s for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they do not support greater limitations than those accounted for herein. In addition to [Plaintiff's] limited, routine, and conservative course of treatment, [Plaintiff] has retained the ability to perform a wide range of daily activities, as described in detail herein. As such, the evidence of record wholly supports the finding that [Plaintiff's] spinal issues limit her to a reduced range of light exertion work that involves occasional use of ladders and stooping.

(*Id*. at 25).

In her RFC analysis, the ALJ discussed the objective medical evidence relating to Plaintiff's symptoms, contrasting records of abnormal gait, musculoskeletal tenderness, and decreased range of motion and sensation with records of normal findings, ultimately finding that the medical evidence did not substantiate the claimed intensity, persistence, and limiting effects of Plaintiff's symptoms. (*Id*. at 24). Because under the SSA's guidance, the ALJ could not disregard Plaintiff's statements about her symptoms based on the objective medical evidence alone, *see supra*, SSR 16-3p, 2017 WL 5180304, at *4, the ALJ attempted to further justify her finding of inconsistency with references to Plaintiff's treatment and daily activities. However, that justification was lacking in both analysis and factual support.

With regard to Plaintiff's "limited, routine, and conservative course of treatment," the ALJ made only one statement that Plaintiff "treated with osteopathic manipulations." (AR, at 24). The ALJ said nothing about the number, frequency, nature, or success of these treatments that would support the conclusion that they were limited, routine, or conservative. The ALJ likewise failed to comment on any other treatments, such as the multiple types and increasing dosages of pain medications and muscle relaxers that are

9

evidenced by the medical record.  (*See e.g.*, AR, at 403, naproxen; *id*. at 492, injections of Toradol and Norflex with lidocaine patch; *id*. at 413, orphenadrine citrate; *id*. at 415, hydrocodone-acetaminophen, methocarbamol, naproxen, orphenadrine citrate; *id*. at 419, duloxetine and Voltaren gel; *id*. at 430, 773, 862, 860-61, 368).

Furthermore, the ALJ wholly failed to address record evidence that Plaintiff's treatment was limited because she could not afford it.  (AR, at 418, note dated 10/18/21, "Not currently taking any of her medications. Says she cannot afford them."); (*id*. at 425, note dated 11/16/21, same); (*id*. at 45, hearing testimony that Plaintiff was living at the Salvation Army).

> [T]he ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96–7p, 1996 WL 374186, at *7–8. An inability to afford treatment is specifically recognized as a legitimate reason for failing to seek treatment. *Id*. at *8. The Tenth Circuit has recently explained that "the ALJ is ordinarily required to address such financial considerations before drawing adverse inferences from the claimant's failure to seek or pursue treatment." *Alarid v. Colvin*, 590 F. App'x 789, 793 (10th Cir. 2014); *see also Madron v. Astrue*, 311 F. App'x 170, 178–79 (10th Cir. 2009) (finding that plaintiff's failure to follow prescribed medical treatment was not substantial evidence supporting ALJ's adverse credibility determination when record indicated plaintiff could not afford the treatment and ALJ did not properly consider such inability to afford such treatment).

*Long v. Colvin*, No. CIV-14-402-F, 2015 WL 5692318, at *6 (W.D. Okla. Sept. 11, 2015), *report and recommendation adopted*, 2015 WL 5708388 (W.D. Okla. Sept. 28, 2015).

The ALJ also failed to provide adequate factual support for her justification of Plaintiff's purported "wide range of daily activities, as described in detail herein," (AR, at

25).  In fact, there is no description of Plaintiff's daily activities in the RFC analysis at all. (*See id*. at 23-27).  The only such description is placed in the Step Three analysis, where the ALJ states that Plaintiff "lives alone and cares for her pet dog, prepares basic meals, performs some light household chores, and shops," (*id*. at 21, citing Exhibits 4E, 6E, Function Reports), and that she "shops in stores and attends church services," (*id*., citing Exhibits 6E, 7F).  This can hardly be construed as a "wide range of daily activities." Moreover, the ALJ minimizes or fully ignores information contained in the Function Reports she cites, namely information that Plaintiff has difficulty dressing because it is "hard to bend and/or stretch to get clothes & put on;" has difficulty bathing because she "can't stand to shower and hard to sit & bathe, afraid I'll fall;" has difficulty caring for her hair because she "do[esn't] brush due to pain in back and barely wash due to back pain;" has difficulty feeding herself because "cooking is hard to stand at stove, microwave, oven;" has difficulty using the toilet because "bending to squat takes time and hurts;" eats mostly frozen, canned, or pre-cooked meals and snacks and fast food; does no laundry because it "hurts too bad;" does not drive; goes to church one time a week and gets groceries one time a week but only "when I think I can make it" because she is "afraid I'll fall by myself and usually can't get there by myself," and "I really just don't go anywhere because of pain." (Exhibit 6E, AR, at 301-308, Function Report dated January 4, 2022). Plaintiff also testified at the hearing that she was then living at the Salvation Army, where she is provided breakfast and dinner, and typically does not eat lunch; a friend takes her to the store; and her only chore is to clean a set of windows every day, which takes her a long time, approximately ten minutes.  (AR, at 44-48).

It is well established that an ALJ must demonstrate that she "considered all of the evidence" and must discuss not only the evidence supporting her decision, but also "the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, she also may not "mischaracterize or downplay evidence to support [her] findings," *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640-41 (10th Cir. 2018). Additionally, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008). Here the ALJ failed to discuss Plaintiff's history of using multiple types of medications as part of the treatment for her allegedly disabling pain, making only a passing reference to osteopathic manipulations. The ALJ failed to reference or consider the fact that Plaintiff was not able to afford additional forms of treatment. Despite claiming that Plaintiff had a "wide range of daily activities," the ALJ did not discuss those activities in the symptom analysis, and her only reference to activities focused on portions of documents that supported a finding of non-disability while minimizing or ignoring portions of the same documents that supported a finding of disability. Due to these flaws in the ALJ's discussion, the symptom analysis and the resulting RFC are not supported by substantial evidence, and remand is required.

**VI.   The Court Declines to Address Plaintiff's Remaining Allegations.**

Because remand is warranted based on the above issue alone, the undersigned need not address Plaintiff's other claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299

(10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VII.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES AND REMANDS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 3rd day of May, 2024.

*[signature]*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE